UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ALE MUPENZI,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

19-cv-183
DECISION & ORDER

---

On February 11, 2019, the plaintiff, Ale Mupenzi, brought this action under the Social Security Act ("the Act"). He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled. Docket Item 1. On October 25, 2019, Mupenzi moved for judgment on the pleadings, Docket Item 12; on January 16, 2020, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 16; and on February 6, 2020, Mupenzi replied, Docket Item 17.

For the reasons stated below, this Court grants Mupenzi's motion in part and denies the Commissioner's cross-motion.[1]

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first

---

[1] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

Mupenzi argues that the ALJ erred in two ways. Docket Item 12. He first argues that the ALJ erred by ignoring opinion evidence and basing the determination of his mental residual functioning capacity ("RFC") on her own lay judgment. *Id.* at 13-17. He also argues that the ALJ likewise erred by relying only on her own lay judgment in determining his physical RFC. *Id.* at 17-18. This Court agrees that the ALJ erred in determining Mupenzi's mental RFC and, because that error was to Mupenzi's prejudice, remands the matter to the Commissioner.

I. **MENTAL RFC**

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Sec'y of Health & Human Servs.*, 686 F.2d 751, 755 (2d Cir. 1982)); *see also Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (same); 42 U.S.C. § 423(d)(5)(B) (requiring that the Commissioner, before rendering any eligibility determination, "make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination"). Thus, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or . . . by a paralegal.'" *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez*, 77 F.3d at 47)). On the other hand, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Id.* at 79 n.5 (quoting *Perez*, 77 F.3d at 48)). The Commissioner's own regulations reflect this duty, stating that "[b]efore [the Commissioner] make[s] a determination that [a claimant is] not disabled, [the Commissioner] will develop [the claimant's] complete medical history . . . [and] will make every reasonable effort to help [the claimant] get medical reports from [her] own medical sources when [she] give[s] [the Commissioner] permission to request the reports." 20 C.F.R. § 404.1512(d)(1).

The Commissioner's regulations further explain that when a claimant is receiving or has received ongoing treatment from a qualified medical professional, the

3

Commissioner "will request a medical source statement [from the claimant's treating source] about what [the claimant] can still do despite [her] impairment(s)." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013) (summary order) (quoting former 20 C.F.R. § 416.913(b)(6)[2]) (additional citation omitted).  That is so because the opinions of treating sources—physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists who have "ongoing treatment relationship[s]" with claimants and therefore are most able to "provide . . . detailed, longitudinal picture[s] of [claimants'] medical impairments"[3]—are entitled to "controlling weight" so long as they are "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the claimant's] case record."[4]  *See* 20 C.F.R. §§ 416.913(a) (2015), 416.927(c)(2)

---

[2] This section was amended, effective March 27, 2017.  Revisions to the Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844, 5875 (Jan. 18, 2017).  Because Mupenzi applied for disability benefits on October 22, 2014—that is, before the date the changes became effective—his claim is governed by the prior regulation.  *See id.* at 5844-46.

[3] Although therapists are considered "other source[s]," *see* 20 C.F.R. § 416.913(d)(1) (2015), whose opinions cannot "establish the existence of a medically determinable impairment," an opinion from such a source still can "outweigh the opinion of an 'acceptable medical source[ ]' . . . [if, f]or example, . . . [the source] has seen the individual more often . . . and has provided better supporting evidence and a better explanation for his or her opinion," *see* Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims, 71 Fed. Reg. 45,593, 45,596 (Aug. 9, 2006); *cf.* 20 C.F.R. § 416.902(a)(7) (2017) (expanding list of "acceptable medical sources" to include "licensed advanced practice registered nurse[s]").

[4] Indeed, an ALJ may not give a treating source's opinion anything less than controlling weight unless she first "explicitly consider[s], *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and[ ] (4) whether the physician is a specialist." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quotations and alterations omitted).  "An ALJ's failure to 'explicitly' apply [these] factors [before] assigning [less-than-controlling] weight" to a treating source

(2015); *see also Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order).

The Second Circuit has observed that the "plain text" of section 416.913(b)(6) "does not appear to be conditional or hortatory: it states that the Commissioner '*will* request a medical source statement' containing an opinion regarding the claimant's residual capacity. The regulation thus seems to impose on the ALJ a duty to solicit such medical opinions." *Tankisi*, 521 F. App'x at 33 (emphasis in original) (quoting former 20 C.F.R. § 416.913(b)(6)) (additional citation omitted). Although "remand is not always required when an ALJ fails in his duty to request [medical source] opinions [from treating sources], particularly where . . . the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity," remand is appropriate where the records are not otherwise complete. *See Tankisi*, 521 F. App'x at 34. Indeed, remand is particularly appropriate when an ALJ fails to solicit a treating source statement from a claimant who is receiving ongoing mental health care. *Cf. Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) ("caution[ing] that ALJs should not rely heavily on the findings of consultative physicians after a single examination," a "concern [that] is even more pronounced in the context of mental illness where . . . a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." (first quoting *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013) (per curiam)). That is the case here.

---

opinion "is a procedural error." *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)).

5

The ALJ found that Mupenzi had the following mental RFC:  "[Mupenzi] is limited to simple and routine tasks in a low stress environment which is defined as only occasional decision making and occasional interaction with coworkers."  Docket Item 7 at 31.  In reaching this determination, the ALJ gave "little weight" to the opinions of non-examining consulting psychologist, K. Lieber-Diaz, Ph.D.; examining consulting psychologist, Rachel Hill, Ph.D.; and treating crisis counselor, Phillip Santiago, M.S.  *Id.* at 35-36.

Dr. Lieber-Diaz reviewed the plaintiff's medical records and determined in February 2015 that his "psychiatric impairment [was] non-severe."  *Id.* at 117.  The ALJ explained that Dr. Lieber-Diaz's opinion was not reliable because "[a] significant amount of evidence which contradicts [the] opinion was submitted at the hearing level of review"—that is, after Dr. Lieber-Diaz reviewed Mupenzi's records.  *Id.* at 35.

Dr. Hill evaluated Mupenzi once in February 2015.  *Id.* at 541-45.  She determined that although Mupenzi had post-traumatic stress disorder ("PTSD") from torture he experienced in the Congo, and although language barriers prevented a full assessment, she was able to conclude that Mupenzi did not have significant psychiatric or cognitive problems.  *Id.* at 544.  She specifically opined that Mupenzi could follow and understand simple directions and instructions, perform simple and complex tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, make appropriate decisions, relate adequately with others, and appropriately deal with stress.  *Id.*  The ALJ also found this opinion unreliable because, like Dr. Lieber-Diaz's opinion, it was rendered before Mupenzi submitted significant additional evidence.  *Id.* at 35.

Counselor Santiago opined in December 2014 that due to his PTSD, Mupenzi "experienced paranoid symptoms which can lead to problems with interpersonal relationships."  *Id.* at 575-76.  "[Mupenzi] state[d] that medical issues prevent him from maintaining employment and has not shown initiative nor good judgment in retaining employment when his economic situation is dire."  *Id.* at 575.  Counselor Santiago treated Mupenzi at Lake Shore Behavioral Health from March 2014 to March 2015.  *See id.* at 591-634.  The ALJ gave Counselor Santiago's opinion little weight because "there [were] three years' worth of counseling records that [Counselor Santiago] did not have the chance to contemplate at the time that [his] opinion was offered."  *Id.* at 36.

The ALJ erred in not soliciting updated medical source statements about Mupenzi's mental health.  Having determined that the three statements in the record were stale by the time she rendered her decision, the ALJ was obliged to solicit new statements, not fabricate medical opinion out of whole cloth.  *See Thomas v. Comm'r of Soc. Sec.*, 2019 WL 2295400, at *2 (W.D.N.Y. May 30, 2019) ("Although the RFC determination is an issue reserved for the [C]ommissioner, an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings." (quoting *House v. Astrue*, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013)); *see also Majdandzic v. Comm'r of Soc. Sec.*, 2018 WL 5112273, at *3 (W.D.N.Y. Oct. 19, 2018) ("A stale medical opinion does not constitute substantial evidence to support an ALJ's findings.");

Because Mupenzi had received treatment from various providers at Lake Shore—including psychiatrists, counselors, and therapists—for at least three years, *see* Docket Item 7 at 635-60, 753-90, 943-1063, the ALJ specifically should have solicited a medical source statement from that clinic.  Had she done so, there is a reasonable

7

likelihood that she would have found Mupenzi eligible for disability benefits.  For example, Lake Shore psychiatrist Hong Rak Choe, M.D., had diagnosed Mupenzi with depressive disorder, not otherwise specified, and PTSD in August 2014.  *See id.* at 661.  Treatment notes from counselors and therapists indicate that Mupenzi occasionally had flashbacks and heard voices or experienced other paranoid thoughts, *see, e.g.*, *id.* at 665 (October 2014), 673 (March 2015), 677 (February 2016).  He also consistently self-reported symptoms of depression.  *See, e.g.*, *id.* at 805 (Patient Health Questionnaire, July 2016), 829 (counselor summarizing Mupenzi's self-reports from January 2016 through February 2017).

The severity of Mupenzi's mental health reflected in these treatment notes is further supported by evidence from Mupenzi's care coordinator at the Jewish Family Center's Center for Survivors of Torture, Anna Skop, L.M.H.C.[5]  Counselor Skop opined in November 2014 that, despite treatment, Mupenzi continued to present with symptoms of "depression and anxiety including depressed mood, reduced appetite and weight loss, impaired memory and concentration, impaired sleep, rumination, and flashbacks and nightmares of past trauma."  *Id.* at 556.  These symptoms arose from Mupenzi's having been "kidnapped and raped and witnesss[ing] the murders of his family in his home country, Congo," as well as his being separated from his 11-year-old daughter who still lived in his Rwanda.  *Id.*  Counselor Skop enclosed the results of Mupenzi's Harvard Trauma Questionnaire, which she characterized as "extremely high for PTSD and [d]epression and [a]nxiety."  *Id.*

---

[5] The ALJ discussed Counselor Skop's submissions, but she did not assign any weight to her opinion regarding the severity of Mupenzi's PTSD, depression, and anxiety.  *See id.* at 32-33.

Instead of soliciting updated medical source statements, the ALJ based Mupenzi's mental RFC on her own evaluation of his activities of daily living. For instance, the ALJ explained that "the evidence indicate[d] that [Mupenzi] experienced less stress and symptoms exacerbation when he [was] employed than when he was not." *Id.* at 33. This conclusion ignored Mupenzi's 2017 discharge from employment for noncompliance. *Id.* at 1040. True, the discharge may have occurred for reasons unrelated to Mupenzi's multiple mental illnesses. But the simple fact is that the ALJ is neither a psychiatrist nor a psychologist, so she was not in a position to determine, for example, that Mupenzi's firing for an apparent miscommunication as to whether he was supposed to work on a given day was entirely unrelated to his "paranoid symptoms which [could] lead to problems with interpersonal relationships," *see id.* at 575-76. Nor could she determine that Mupenzi's struggles with his subsequent position—"the inconsistent schedule"—was unrelated to his anxiety. *See id.* at 1042.

What is more, that Mupenzi may have *preferred* to work does not mean that he *could* work. *See id.* at 34 (ALJ noting that "Mupenzi [was] upset about not having a job" and that he was "mildly depressed *due to not having a job*" (emphasis in original)). Many individuals with disabilities would prefer to work—whether to "distract" themselves from their symptoms, *see id.* at 33, to support themselves and their families, *id.* at 34, or for any other reason. But that preference alone cannot alleviate the limitations that flow from an individual's severe disabilities. The ALJ's reliance on Mupenzi's stated preference to work thus appears to reflect a fundamental misunderstanding of the nature of disability insurance—a misunderstanding that is all the more problematic here because as a refugee Mupenzi likely did not have a full understanding of the panoply of

9

benefits available to individuals with disabilities.  Lacking that social and cultural capital, his stated preference to work is by no means inconsistent with his not having the RFC to work.

In short, because there was an "obvious gap[ ] in the administrative record" as it related to Mupenzi's mental functioning, the ALJ was obligated make a reasonable effort to fill that gap before rejecting Mupenzi's application for disability benefits.  More specifically, the ALJ was required to obtain a non-stale medical source statement from a treating source.  See *Rosa*, 168 F.3d at 79 n.5 (quoting *Perez*, 77 F.3d at 48)).  Because the ALJ did not do so and instead relied on her own lay judgment to determine Mupenzi's RFC, the Court remands the matter so that the ALJ may develop the record and then re-evaluate Mupenzi's application in light of the expanded record.

### A.  Physical RFC

Mupenzi also makes a cursory argument that "[f]or the same reasons as described above, the ALJ erred in crafting a [physical] RFC with reference to her own lay judgment and in substituting her own opinion for expert opinion." Docket Item 12 at 17.  But, unlike his developed arguments with respect to the ALJ's mental RFC determination, Mupenzi neither explains what "specific limitations within [the] FRC . . . conflict with all of the medical opinion evidence," *id.*, nor cites *any* supposedly contradictory evidence.  What is more, the ALJ's determination in the physical realm was not developed out of whole cloth—the ALJ gave "some weight" to the opinion of consulting physician Donna Miller, D.O.  *See* Docket Item 7 at 35.

"It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put

flesh on its bones." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990).  Given the ALJ's reliance on competent medical opinion and the claimant's failure to identify any specific error, let alone harm that inured to him from such error, the Court will not remand with respect to the ALJ's physical RFC determination.

## **CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 16, is DENIED, and Mupenzi's motion for judgment on the pleadings, Docket Item 12, is GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: July 20, 2020
Buffalo, New York

      */s/ Hon. Lawrence J. VIlardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE